COMMONWEALTH *VS.* EARL C. MONTGOMERY.

No. 99-P-1267.

Suffolk. March 21, 2001. - October 15, 2001.

Present: JACOBS, GILLERMAN, & CYPHER, JJ.

*Child Abuse. Unnatural Sexual Intercourse. Assault with Intent to Rape. Evidence,* Fresh complaint, Videotape, Argument by prosecutor. *Practice, Criminal,* Assistance of counsel, Argument by prosecutor, Instructions to jury. *Constitutional Law,* Assistance of counsel.

At the trial of indictments alleging sexual intercourse and abuse of a child under sixteen years of age and assault of a child with intent to rape, the admission of a videotape in which the victim corroborated her own testimony and bolstered her own credibility did not create a substantial risk of a miscarriage of justice, where the initial mention of the videotape occurred during the defendant's cross-examination of the victim, defense counsel used its contents in an attempt to discredit the victim, and defense counsel subsequently effectively assented to the introduction of the videotape itself. [832-833]

At the trial of indictments alleging sexual intercourse and abuse of a child under sixteen years of age and assault of a child with intent to rape, allusions by the prosecutor to the fact that the defendant had been "put in jail" on charges unrelated to the present case, and comments by the prosecutor on the defendant's irregular attention to his family and his failure to pay much child support, did not create a substantial risk of a miscarriage of justice, given the defendant's own extensive evidence of a poor relationship with his daughter and her mother and of having been jailed as a result of a family dispute, supporting his theory that he had been falsely accused in this case; further, the prosecutor's question to the mother of the victim regarding how old she and the defendant were when they began their romantic relationship did not create a substantial risk of a miscarriage of justice, where evidence that the defendant, while himself a teenager, was attracted to a teenaged female would not support a conclusion that he would engage in a sexual relationship with his teenaged daughter many years later, without undue speculation. [834]

At a criminal trial, the failure of defense counsel to object to portions of the prosecutor's closing argument did not constitute ineffective assistance of counsel, where the prosecutor's argument, considered as a whole and taking into account the strong advocacy permitted to prosecutors and the measure of sophistication accorded to juries, did not create a substantial risk of a miscarriage of justice. [834-835]

At a criminal trial, the giving of a humane practice instruction to the jury was not error, where the defendant requested the instruction. [835-836]

INDICTMENTS found and returned in the Superior Court Department on June 13, 1997.

The cases were tried before *Elizabeth B. Donovan*, J.

*Alexander M. Esteves* for the defendant.

*Paul B. Linn*, Assistant District Attorney (*David A. Deakin*, Assistant District Attorney, with him) for the Commonwealth.

JACOBS, J. In August, 1998, a Superior Court jury convicted the defendant on two charges of sexual intercourse and abuse of a child under sixteen years of age, G. L. c. 265, § 23, and on a charge of assault of a child with intent to rape, G. L. c. 265, § 24B. The jury acquitted the defendant on a third charge under G. L. c. 265, § 23.

The incidents at issue occurred on the night of December 25, 1996, when the victim, the defendant's daughter, was fourteen years old. On appeal, the defendant raises four principal issues. We affirm.

1. *The admission of a videotape.* Anticipating the majority opinion in *Commonwealth* v. *Quincy Q.*, 434 Mass. 859 (2001), decided after the briefing and arguments in this case, the defendant claims that a videotape of an interview of the victim[1] was erroneously admitted, creating a substantial risk of a miscarriage of justice. In that case, the court held that a videotape of the complainant in a sexual assault case, depicting her answering questions posed by her parents and the defendant's mother, erroneously "permitted the complainant to corroborate her own testimony and bolster her own credibility." *Id.* at 869. The majority opinion noted, *supra* at 868, that the admission of the videotape was contrary to the substance of *Commonwealth* v. *Peters*, 429 Mass. 22 (1999), which enunciated the governing principle that the complainant in a sexual assault case may not engage in self-corroboration and "should not be allowed to testify about the details of the complaint." *Id.* at 30.

We conclude that *Quincy Q.* and *Peters* are inapplicable here because of the circumstances in which the videotape was introduced to the jury. The initial mention of the videotape occurred during the defendant's cross-examination of the victim,

---

[1]The interview was conducted by a coordinator of the sexual assault investigation network of the Massachusetts Society for the Prevention of Cruelty to Children.

the prosecution's first witness. After obtaining from the victim an acknowledgment that she reviewed the videotape during the interval between her direct testimony and cross-examination, defense counsel proceeded to examine the victim concerning numerous apparent discrepancies between her direct testimony and her videotaped statement. His examination reveals that defense counsel was then aware of the date of the videotape, its contents, and the identity of the interviewer. The videotape itself was not introduced until the third day of trial after the prosecutor had informed the judge at sidebar, apparently in the presence of defense counsel, that, "we want to play the video tape and we both agree on that." The videotape was then played to the jury and entered as an exhibit with defense counsel expressly indicating he had no objection. In closing argument, defense counsel relied heavily on the videotape in arguing that the victim's testimony was the product of coaching and that she could not be believed.

The obvious tactical choice by defense counsel to assent to the introduction of the videotape and to use its contents in an attempt to discredit the victim precludes the defendant from now challenging its admission in evidence. *Commonwealth* v. *Fernette*, 398 Mass. 658, 667 (1986). Our conclusion is analogous to the concept that "[t]he theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review. . . ." *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937). See *Commonwealth* v. *McCaster*, 46 Mass. App. Ct. 752, 763-764 (1999), and cases cited. Just as a defendant may not complain about corroborative details first insinuated through cross-examination of the complainant, and further explored by the prosecutor during redirect examination, see *Commonwealth* v. *Peters*, *supra* at 30, so too the defendant, here, may not complain about corroborative details introduced as a result of his deliberate defense stratagem. Accordingly, we discern no judicial error. Moreover, by effectively assenting to the introduction of the videotape at trial, the defendant has waived his appellate claims of prejudice, erroneous admission of hearsay evidence and violation of his right of confrontation. *Commonwealth* v. *Amirault*, 424 Mass. 618, 649-650 (1997).

2. *Evidence of bad character.* While the prosecutor improperly alluded to the defendant's bad character in his opening statement that the defendant had been "put in jail" on charges unrelated to the present case, and commented on the defendant's irregular attention to his family and his failure to pay much child support, there was no objection. In the context of the defendant's own extensive evidence of a poor relationship with his daughter and her mother and of having been jailed as a result of a family dispute, introduced to support his theory that he had been falsely accused in this case in retaliation for his behavior toward his family, there was no substantial risk of a miscarriage of justice.

The defendant also claims the prosecutor "knowingly and calculatingly" asked the victim's mother how old she and the defendant were when they began their romantic relationship, asserting that the jury would conclude from her reply that she was fifteen and that the defendant was having illegal sex with her. He argues that this question and answer would cause the jury to infer that he had an illegal sexual interest in his daughter, because she was approximately the same age at the time of the charged incidents in this case. Even if we view the question as an improper one, evidence that the defendant was attracted to a teenaged female while himself a teenager, does not support, without undue speculation, the conclusion that he would engage in a sexual relationship with his teenaged daughter many years later.

3. *Closing argument.* Contrary to the defendant's claims, his counsel's failure to object to portions of the prosecutor's closing argument did not fall below the standard of *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). The prosecutor's argument that the defendant would have the jury believe that the Commonwealth's witnesses were all lying, and the prosecutor's assertions that the defendant was lying, generally were accompanied by the words "the evidence establishes," and thus were "expressed as a conclusion to be drawn from the evidence and not as a personal opinion." *Commonwealth v. Murchison,* 418 Mass. 58, 60-61 (1994). There is no indication the prosecutor vouched for any witness or implied that he had any knowledge or information beyond the record, and his single

lapse into using the phrase, "I'll tell you," reasonably would not have been taken by the jury as an expression of personal belief. The rhetorical query, "if this were an innocent man sitting here, what would he have said to [the police]?," was a permissible reference to an inconsistency between the defendant's pretrial statement to the police, and a material part of his testimony at trial. See *Commonwealth* v. *Sherick,* 401 Mass. 302, 304-305 (1987). A reference to the defendant as a manipulator was a characterization based on a reasonable view of the evidence and therefore permissible. *Commonwealth* v. *Connor,* 392 Mass. 838, 853 (1984). Also, the prosecutor's reactive comment to defense counsel's argument that there was a lack of medical evidence to corroborate rape did not constitute burden shifting, as claimed by the defendant, but merely emphasized medical testimony indicating that such physical evidence rarely is found, and was proper comment on a trial tactic. *Commonwealth* v. *Cohen,* 412 Mass. 375, 388 (1992).

Considering the prosecutor's closing argument as a whole, the strong advocacy permitted to prosecutors, and the measure of sophistication accorded juries, *Commonwealth* v. *Sanna,* 424 Mass. 92, 107-108 (1997), and cases cited, any impropriety in the prosecutor's argument did not create a substantial risk of a miscarriage of justice. Where an omission of counsel does not create a substantial risk of a miscarriage of justice, there is no basis for a claim of ineffectiveness of counsel. *Commonwealth* v. *Curtis,* 417 Mass. 619, 624-625 n.4 (1994). See *Commonwealth* v. *Jordan,* 49 Mass. App. Ct. 802, 817 (2000).

4. *Jury instructions.*[2] Because he claims that certain statements he made to police detectives were not incriminating, the defendant argues the judge erroneously gave a humane practice instruction, thereby "reinforc[ing]" to the jury that he had "confessed." He asserts the statements in question were merely his "erroneous recollections of the date of the alleged

---

[2]The argument in the defendant's brief begins with a paragraph citing *Commonwealth* v. *Montanino,* 409 Mass. 500, 510 (1991) ("the ultimate responsibility for determining the freshness of the complaint lies with the jury"), but the discussion shifts to the "humane practice" instruction. Because the defendant does not indicate how *Commonwealth* v. *Montanino, supra,* applies to this case, or make any argument alleging any erroneous fresh complaint instruction, we consider only the humane practice issue.

incident."[3] The defendant acknowledges that the trial judge asked defense counsel if such an instruction should be given, and the Commonwealth correctly points out that defense counsel requested the instruction. In any event, "[a]n incriminating response includes any response, inculpatory or exculpatory, which the prosecution might seek to use against the suspect at trial."[4] *Commonwealth* v. *Sheriff*, 425 Mass. 186, 199 n.15 (1997). There was no error.

*Judgments affirmed.*

---

[3]The statements made by the defendant to the police officers who interviewed him in jail contained several differences from his trial testimony.

[4]This quotation is founded on *Rhode Island* v. *Innis*, 446 U.S. 291, 301 n.5 (1980), which, quoting from *Miranda* v. *Arizona*, 384 U.S. 436, 476-477 (1966), explains that "no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely *intended* to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word. . . ." (Emphasis added.)